UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | |
|---|---|
| CLOCK SHOP BEVERAGE LLC, | Case No. 3:22-cv-21 |
| *Plaintiff,* | |
| v. | MEMORANDUM OPINION & ORDER |
| COUNTERMEASURES CONSULTING, INC. | |
| | Judge Norman K. Moon |
| *Defendant.* | |

## I. INTRODUCTION

Before the Court is Defendant Countermeasures Consulting, Inc.'s (CMC's) motion to dismiss Plaintiff Clock Shop Beverage LLC d/b/a Waterbird Spirits' (Waterbird's) complaint, which alleges breach of contract and unjust enrichment.

Waterbird is a Virginia limited liability company that makes ready-to-drink cocktails with its principal place of business in Charlottesville, VA. (Dkt. 7 (Complaint) at ¶¶ 1, 8). It began operating in 2019. (*Id.* at ¶ 1). CMC is a Tennessee corporation that offers consulting services with its principal place of business in Franklin, Tennessee. (*Id.* at ¶¶ 2, 9).

The Complaint alleges that the parties entered into an oral agreement in or about January 20, 2021, in which CMC agreed to provide "expansion services" and "shared rep services" for Waterbird in exchange for a payment ranging from $1 to $2 per case of products sold. (*Id.* at ¶¶ 13–17). The Complaint further alleges that the parties agreed that Waterbird would be the only "spirits-based ready-to-drink cocktails" provider for which CMC would provide such services. (*Id.* at ¶¶ 18–19).

On or about April 12, 2021, the parties executed a "Buy Out Option Agreement" which acknowledged the existing oral contract and "agreed that Waterbird would have the right, at any time, to terminate the Oral Agreement by making a one million dollar buy-out payment to [CMC]." (*Id.* at ¶¶ 20). Later in 2021, CMC requested to be released from the agreement with respect to "shared rep" services, but not expansion services, to which Waterbird agreed. (*Id.* at ¶ 22). Then, in February 2022, CMC "suggested to Waterbird that it would no honor longer its exclusivity obligations." (*Id.* at ¶¶ 23–24). After that, CMC "began promoting the expansion [of] at least one other ready-to-drink cocktails" provider, namely, Freshie Tequila Seltzer, a direct competitor of Waterbird. (*Id.* at ¶ 26).

CMC is no longer providing services to Waterbird. (*Id.* at ¶¶ 27–29). Waterbird continues to pay CMC "for services and exclusivity it is not receiving." (*Id.* at ¶ 30).

Waterbird's Complaint pleads two causes of action, breach of contract (Count 1) and unjust enrichment (Count 2), and also asks for a declaratory judgment "that [CMC] is prohibited from providing expansion services to purveyors of spirits-based ready-to-drink cocktails other than those made by Waterbird" (Count 3). (*Id.* at ¶¶ 32–48).

Now, CMC moves to dismiss the Complaint, arguing (1) that this Court lacks personal jurisdiction over CMC, and (2) that Waterbird has failed to state a claim for Counts 2 and 3. (Dkt. 8).

The Court will take up the personal jurisdiction issue in this opinion and order, and the failure to state a claim issue in a later opinion and order.

## II.  LEGAL STANDARD

A party may move to dismiss a case for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2). When personal jurisdiction is challenged by the defendant, the

plaintiff has the burden of proving jurisdiction by a preponderance of the evidence. *Mylan Labs, Inc. v. Akzo, N.V.*, 2 F.3d 56, 59-60 (4th Cir. 1993). The plaintiff must make a *prima facie* showing that there is a sufficient jurisdictional basis to survive a motion to dismiss. *New Wellington Fin. Corp. v. Flagship Resort Dev. Corp.*, 416 F.3d 290, 294 (4th Cir. 2005). In cases, like this one, where a defendant submits evidence that denies facts necessary for personal jurisdiction, a plaintiff must, under threat of dismissal, present evidence that disputes each jurisdictional element contested by the defendant. *New Venture Holdings, L.L.C. v. DeVito Verdi, Inc.*, No. 2:18-cv-370, 2020 WL 6866563, at *2 (E.D. Va. Jan. 7, 2020).

### III.  DISCUSSION

This Court has personal jurisdiction over CMC. In a case such as this one where the defendant's contacts with Virginia provide the basis of the suit, "those contacts may establish specific jurisdiction," as opposed to cases where the defendant's general non-case related contacts with the forum state provide the basis for personal jurisdiction, where the Court exercises "general" personal jurisdiction. *ALS Scan, Inc. v. Dig. Serv. Consultants, Inc.*, 293 F.3d 707, 712 (4th Cir. 2002).

The Supreme Court has provided the standard for specific personal jurisdiction as:

> [W]here the defendant deliberately engaged in significant activities within a State, *or has created continuing obligations between himself and residents of the forum*, he has availed himself of the privilege of conducting business there, and because his activities are shielded by the benefits and protections of the forum's laws it is presumptively not unreasonable to require him to submit to the burdens of litigation in that forum as well.

*Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475-76 (1985) (emphasis added).

The Court notes that Virginia's long-arm statute is co-extensive with due process: "A court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action from the person's . . . Transacting any business in this Commonwealth." Va.

3

Code § 8.01-328.1(A)(1). This provision "extends the court's personal jurisdiction to encompass all nonresidents who transact any business within Virginia so long as the cause of action asserted arises from the nonresident's transaction of business. One act of transacting business will suffice." *Peanut Corp. of Am. v. Hollywood Brands, Inc.*, 696 F.2d 311, 313–14 (4th Cir. 1982).

Here, although CMC is not a Virginia resident, CMC contracted with a Virginia company, directed telephonic and email communications into Virginia, met with Virginia-based employees, sent invoices to Virginia, and accepted more than $123,000 in payments mailed from Virginia. The Court also notes that CMC initiated the parties' initial contract negotiations by reaching out to Waterbird, which CMC knew was located in Virginia, and that shortly after the parties came to an agreement, CMC posted an ad on social media advertising Waterbird's Virginia-based business. Those facts establish "minimum contacts" for due process purposes. *See Burger King*, 471 U.S. at 475–76; *see also Delta Consulting Grp, Inc. v. HMM Hosp.*, No. 21-403, 2021 WL 8202604, at *3 (E.D. Va. June 3, 2021) (stating that courts consider "(1) where any contracting occurred, and where the negotiations took place, (2) who initiated the contact, (3) the extent of the communications, both telephonic and written, between the parties, and (4) where the obligations of the parties under the contract were to be performed").

The Court must also provide substantial weight to the fact that the parties agreed to be bound by Virginia law in the buyout option agreement, which points in favor of a Virginia court having personal jurisdiction over the parties to the agreement. *Burger King*, 471 U.S. at 481–82.

The Court holds that it has personal jurisdiction over CMC for this case.

## IV. CONCLUSION

For the reasons stated, Defendant's motion to dismiss, Dkt. 8, is DENIED with respect to personal jurisdiction. The Court will sometime later issue a subsequent opinion on the other

issues presented in the motion to dismiss.

    It is so ORDERED.

    The Clerk of Court is directed to send a copy of this opinion and order to all counsel of record.

    Entered this <u>24th</u> day of June 2022.

                                        NORMAN K. MOON
                                        SENIOR UNITED STATES DISTRICT JUDGE